**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:22-CR-717 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE CARMEN E. |
| | ) | HENDERSON |
| JEFFREY ROGERS, | ) | |
| | ) | |
| Defendant. | ) | **OPINION AND ORDER** |

Before the Court is Defendant Jeffrey Rogers's ("Rogers") Motion to Revoke Detention Order ("Motion"). (ECF No. 16). For the reasons explained below, the relief sought in Rogers's Motion is **GRANTED**.

**I.     PROCEDURAL BACKGROUND**

**a.  The Charges**

On December 23, 2020, Rogers was indicted with the unlawful discharge of a firearm at or into a habitation in state court. (ECF No. 14, Transcript of January 19, 2023 Detention Hearing ("Transcript"), PageID# 45–46; ECF No. 16, PageID# 74). Rogers was released on bond following the indictment. (ECF No. 14, PageID# 48). On December 15, 2022, Rogers was indicted by a federal grand jury for violating 18 U.S.C. §§ 922(n) and 924(a)(1)(D), having allegedly received a firearm and ammunition while under the state-court indictment.

**b.  The Detention Hearing**

Magistrate Judge Carmen E. Henderson conducted the detention hearing by videoconference on January 19, 2023. (ECF No. 14). The Court accepted evidence and heard arguments on detention. (*Id.*).

1

In support of detention, the Government first proffered the police report associated with the December 23, 2020 charge. (ECF No. 14, PageID# 45; ECF No. 17-5, Exhibit 5, PageID# 94). The Government explained that on December 23, 2020, Rogers fired a weapon at several houses in his neighborhood. (ECF No. 14, PageID# 7–8; ECF No. 17-5, PageID# 97–98). Rogers did not obey law enforcement's commands to drop his weapon and get on the ground, instead walking toward law enforcement with two guns in his waistband. (ECF No. 14, PageID# 46–47; ECF No. 17-5, PageID# 97). Rogers was taken into police custody following a struggle. (ECF No. 14, PageID# 47; ECF No. 17-5, PageID# 98). Law enforcement recovered shell casings and discovered damage to occupied homes in the vicinity where they arrested Rogers. (*Id.*). They took Rogers to the hospital. (ECF No. 14, PageID# 48; ECF No. 17-5, PageID# 99). At some point Rogers left the hospital. (ECF No. 14, PageID# 48). It was alleged that he phoned his son and told him to bring him guns. (*Id.*). No evidence was introduced corroborating this allegation or that Rogers received the guns allegedly requested.

The Government next proffered a police report prepared as the result of a call to Rogers's home on February 20, 2022 (while Rogers was on bond relating to the December 23, 2020 charges), during which police found Rogers shot in the leg in his driveway. (ECF No. 14, PageID# 48; ECF No. 17-6, Exhibit 6, PageID# 118). Rogers first told them that he was shot by a stranger in his driveway right after returning home in his truck. (ECF No. 14, PageID# 49; ECF No. 17-6, PageID# 118). Officers observed that Rogers's truck was cold and followed a blood trail from Rogers's driveway to his living room, where they discovered a jammed handgun, a spent shell casing and bullet, a cell phone, and a white substance suspected to be narcotics. (ECF No. 14, PageID# 49; ECF No. 17-6, PageID# 120). Rogers later told them that he knew the person who shot him, that the shooting happened somewhere other than his home, and that it was related to a

motorcycle club argument. (ECF No. 14, PageID# 49–50; ECF No. 17-6, PageID# 122). Rogers asked the officers not to investigate the shooting. (*Id.*).

The Government then proffered two photographs of Rogers taken in May 2022 when Rogers was pulled over for allegedly having fictitious plates on his truck (again while Rogers was still on bond for the original gun offense). (ECF No. 14, PageID# 50; ECF Nos. 17-3, 17-4; PageID# 92–93). Law enforcement found a loaded firearm on the front seat of the truck. (ECF No. 14, PageID# 51; ECF No. 17-3, PageID# 92). They also photographed Rogers wearing a t-shirt printed with the message, "Support 81 / Snitches Are A Dying Breed." (*Id.*). The Government stated that "81" refers to the Hell's Angels motorcycle gang, and that Rogers informed the police that he was involved with the Hell's Angels. (ECF No. 14, PageID# 51-52). Rogers also told them that his leg hurt because he had been attacked by multiple individuals at his home some months prior. (*Id.* at PageID# 55).

Finally, the Government proffered two additional photographs and information regarding another police encounter. The first photograph was taken when Rogers was arrested in December 2022 on the charges pending in this Court; it shows Rogers wearing a sweatshirt that stated, "Portage County / Support 81." (ECF No. 14, PageID# 52; ECF No. 17-1, PageID# 90). The second photograph is a screenshot from Rogers's Facebook page, dated November 14, 2022, depicting Rogers apparently laying with a pile of weapons, including a gun; the caption read, "She said me or them have to go and I have never slept so good lmao." (ECF No. 14, PageID# 53–54; ECF No. 17-2, PageID# 91). The Government also alleged there was another occasion when police were called to Rogers's residence; he allegedly was involved in a violent altercation involving hammers, which left Rogers with a headwound. (ECF No. 14, PageID# 54). There was no information presented as to the seriousness of the wound or that it required medical treatment.

Rogers, through counsel, proffered the Pretrial Services Report ("Report"), which recommends that Rogers be released on bond. (*Id.* at PageID# 56; *see* Report. Rogers also proffered that (1) Roger is not now nor has he ever been a member of the Hell's Angels; and (2) the photograph that appears in the screenshot of Rogers's Facebook page was taken several years ago and not while Rogers was on bond. (*Id.* at PageID# 56–57).

The Court then heard arguments on the matter of detention. (*Id.* at PageID# 57). The Government conceded that Rogers is not a flight risk, arguing instead that no bond conditions will protect the community during the pendency of this case. (*Id.* at PageID# 58). The Government pointed to Rogers's possession of firearms while on bond, first during the February 2022 incident when law enforcement discovered a firearm in Rogers's home, and second during the May 2022 traffic stop when law enforcement observed a firearm in Rogers's truck. (*Id.*). The Government argued that these facts, combined with Rogers's involvement in a shooting and the violent nature of the December 2020 state-court offense, show that Rogers cannot be trusted and that he is a danger to the community. (*Id.* at PageID# 59–60).

Rogers's counsel argued that the Report supports Rogers's release pending trial. (ECF No. 14, PageID# 61). Rogers lives with his mother, is a lifelong resident of the community, and has been steadily employed for over 20 years in logging, landscape, and tree service. (*Id.* at PageID# 61). Rogers's counsel noted that the Government's detention arguments are largely derived from the conduct underlying Rogers's state-court case, explaining that the state court had all of the same information before it in December 2022, when Rogers was sentenced to five years of community control. (*Id.* at PageID# 62). Rogers's counsel also argued that Rogers was a shooting *victim* in February, and that there is no evidence that Rogers shot himself that day. He stated that Rogers's attire during the May 2022 traffic stop and December 2022 arrest are irrelevant to whether he is a

4

danger to the community. (*Id.* at PageID# 63). Rogers's counsel referenced the Report's criminal history section, which shows that his last offense prior to the December 2020 arrest was in 2002, and that Rogers has already plead guilty and received a sentence for the December 2020 conduct. (*Id.* at PageID# 63–64). Rogers's counsel averred that the instant charges may be subject to dismissal for unconstitutionality under recent Supreme Court precedent, thus calling into question the propriety of detention. (*Id.* at PageID# 64).

### c. The Detention Order and Rogers's Motion

Following arguments, Magistrate Judge Henderson considered the 18 U.S.C. § 3142(g) factors and found that the nature of circumstances of the offense weigh in favor of detention because Rogers was found with a firearm while "under indictment for the very reason why he shouldn't have a firearm, because he improperly handled a firearm before." (ECF No. 14, PageID# 67). Regarding Rogers's history and characteristics, Magistrate Judge Henderson pointed to the conduct underlying Rogers's December 2020 arrest, including Rogers's general lack of respect for the law and his chosen apparel, and found that this factor also weighed in favor of detention. (*Id.* at PageID# 68–69). Magistrate Judge Henderson then found that the nature and seriousness of danger to any person in the community was high, since Rogers not only improperly received the firearm from the May 2022 traffic stop, but because Rogers has a history of actually using firearms near innocent bystanders. (*Id.* at PageID# 69–70). Finally, Magistrate Judge Henderson found that there is no condition that the Court can put on Rogers to stop his dangerous behavior; she noted that while he was on bond in the past, he was shot once and caught with firearms at least twice. (*Id.* at PageID# 70).

The same day, Magistrate Judge Henderson issued a Detention Order Pending Trial, ordering Rogers held without bond during this case. (ECF No. 11). The detention order bases

detention on "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (*Id.* at PageID# 31). This finding was based on the following: (1) the weight of evidence against [Rogers] is strong; (2) prior criminal history; (3) participation in criminal activity while on probation, parole, or supervision; (4) Rogers's history of violence or use of weapons; (5) Rogers's prior attempts to evade law enforcement; and (6) prior violations of probation, parole, or supervised release.

Rogers moved this Court to revoke Magistrate Judge Henderson's detention order on January 24, 2023. (ECF No.16, Motion to Revoke Detention Order ("Motion")). Rogers's Motion advances arguments similar to those which Rogers's counsel made at the detention hearing: (1) before the December 2020 charge, Roger's most recent criminal charges were 2002 (*id.* at PageID# 77); (2) the state-court judge put Rogers on bond during the pendency of the state-court charges (*id.* at PageID# 78); and (3) that Mr. Rogers was shot in his driveway in February 2022 and later found with a gun in May 2022 do not support detention because there is no evidence that those incidents were accompanied by violent behavior by Rogers. (*Id.*). Rogers also notes in his Reply Brief that there was a seven-month gap between the May 2022 traffic stop and his indictment and arrest in this case for the same incident; the Government's decision to wait seven months to seek an indictment, he asserts, is inconsistent with its current position that no conditions can assure the safety of the community. (ECF No. 19, PageID# 165).

The Government opposed Rogers's Motion, also making the same arguments made during the detention hearing (ECF No. 17). It argued that the detention order should remain in place because the four statutory factors enumerated in 18 U.S.C. § 3142(g) all weigh in favor of detention. (*Id.* at PageID# 216–19). Specifically, the Government identifies Rogers shooting his neighbor's homes, subsequent threats to responding officers, numerous inconsistencies in the

6

statements given by Rogers to law enforcement, and his conduct on bond as overwhelming evidence of Rogers's danger to the community. (*Id.* at PageID# 88).

## II. LAW AND ANALYSIS

### a. Standard of Review

Rogers's Motion seeks revocation of the detention order under 18 U.S.C. § 3145(b), which permits the district court to review a magistrate judge's detention order. The district court reviews a magistrate judge's detention order *de novo*. *United States v. Ohuche*, No. 1:22-cr-138, 2022 WL 4366974, at *3 (N.D. Ohio Sept. 16, 2022). "Title 18 U.S.C. § 3142 'provides the framework for the district court's analysis as to whether release pending trial is proper.' *Id.* (citing *United States v. Williams*, No. 3:19-CR-187, 2020 WL 2529356 (E.D. Tenn. May 18, 2020 (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion).

The Bail Reform Act permits detention pending trial only if a judicial officer finds, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142. Detention based on dangerousness must be "supported by clear and convincing evidence." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(f)(2)(b)).

### b. The Section 3142 Analysis

Title 18 U.S.C. § 3142(g) enumerates four factors to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) The weight of the evidence against the person;
> (3) The history and characteristics of the person, including—

7

> (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). The Court will therefore review each of these factors to determine whether Rogers should be released pending trial.

### 1. *Nature and Circumstances of the Offense (18 U.S.C. § 3142(g)(1))*

"The first § 3142(g) factor considers "whether the offense is a crime of violence, a [sex trafficking offense], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." *United States v. Littleton*, No. 5:21CR870, 2022 WL 4819551, at *2 (N.D. Ohio Oct. 3, 2022) (quoting 18 U.S.C. § 3142(g)(1)). The charge against Rogers relates to Rogers's receipt of a firearm while under indictment in a state-court case that also involved firearms. The allegations in the indictment, if true, occurred while Rogers was on bond in the state-court case, but the traffic stop itself does not include allegations of violent behavior. Since the charge relates to firearms, and it occurred while on bond for a firearm offense, the Court finds that this factor weighs in favor of detention.

2. ***Weight of the Evidence and History and Characteristics (18 U.S.C. § 3142(g)(2) and (g)(3))***

The weight-of-the-evidence factor under section 3142(g)(2) "goes to the weight of evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). *See United States v. Tawfik*, 852 F. App'x 965, 966 (6th Cir. 2021) (same); *United States v. Spivak*, 555 F. Supp. 3d 541, 548 (N.D. Ohio 2021) (clarifying that the weight-of-the-evidence factor of section 3142(g)(2) "is not a pretrial determination of guilt"). Additionally, the factor assessing defendant's history and characteristics does not require a prior record of violence to establish dangerousness. *Stone*, 608 F.3d at 950 (citing *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991). A finding that a person was on bond at the time of the offense supports a finding of dangerousness, and thus, detention. 18 U.S.C. § 3142(g)(3)(B); *see United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) (explaining that, since the defendant was on parole at the time of the offense, it raised "serious questions of possible dangerousness").

The Report proffered by Rogers recommends that Rogers be released on an unsecured bond and placed under standard conditions of supervision, which includes a prohibition against possessing a firearm, destructive device, or other weapon. (*See* Report). The Report states that Rogers's risk of nonappearance and/or dangerousness is low based on the statistics of individuals with a similar background and criminal history. (*Id.*). Prior to Rogers's recent conviction for discharging a firearm at or into a habitation (for which Rogers is currently serving five years of community control with conditions), Rogers's last criminal conviction occurred in 2002, when Rogers pleaded "no contest" to misdemeanor assault and served 55 days in jail. (*Id.*). The recommendation of Pretrial Services remains unchanged since the detention hearing.

9

Rogers's mother has corroborated his long-term employment and that he lives with her. She informed Pretrial Services that Rogers could return to her home if released on bond, and that she would ensure that no firearms are in the house while Rogers remained there. (Report). The Government made no effort to refute Pretrial Services' recommendations at the detention hearing, and made no effort to address the recommendations in its written opposition to Rogers's Motion.[1]

Rogers's history of firearm possession and/or association with guns while on bond, including while residing with his mother, supports detention. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). However, Rogers's employment, family ties, and lack of criminal history between 2002 and 2020—together with the recommendation of Pretrial Services—all weigh in favor of pretrial release. The bulk of the evidence proffered by the Government at the detention hearing relates to the incident for which Rogers has already been sentenced and his conduct while on bond for that incident. While this Court is not bound by the actions of the state-court judge, or lack thereof, it is worthy of consideration that the judge did not revoke Rogers's bond or impose jail time at sentencing. It is also noteworthy that the Government (and state authorities) did not seek to arrest or charge Rogers for the May 2022 gun incident until December 2022, after the state court sentenced him; the Government apparently charged him due to its dissatisfaction (and the dissatisfaction of state authorities) with the state court's disposition of the case. (ECF No. 14, PageID #55–56). On this point, the Government stated, "This case did not come onto the federal radar until how the prior case was handled after all these activities on bond. It was presented to our office and it was quickly turned around and indicted at that time." (*Id.*). It is somewhat disconcerting that Mr. Rogers was allowed by authorities to remain on the state-court

---

[1] At a hearing on the Motion on February 9, 2023, the Government did indicate that it disagrees with the Pretrial Services recommendation and does not understand how Pretrial Services could make such a recommendation given Rogers's conduct.

10

bond for those seven months, and now the Government argues to this Court that Rogers cannot be trusted on bond. Given all of the foregoing, the equities as to this factor slightly favor bond.

### 3. *Nature and Seriousness of the Danger Posed by Rogers's Release (18 U.S.C. 3142(g)(4))*

Finally, with regard to the nature and seriousness of the danger to the community, there are significant concerns. As to this factor (and others), Rogers did not do himself any favors with his conduct while on the state-court bond. However, as the Government acknowledged, the Report recommended an unsecured bond with conditions. (ECF No. 14, PageID# 60). The Government has not offered any information to contradict that recommendation; put differently, the Government has not explained how Pretrial Services, which is aware of all the information presented by the government, was erroneous in its recommendation. This Court shares many of Magistrate Judge Henderson's concerns regarding Rogers's behavior and trustworthiness. However, the Pretrial Services recommendation makes it difficult for this Court to find by clear and convincing evidence that there are no conditions which will ensure he is not a danger to any person or the community. These considerations weigh in favor of release.

The Facebook photograph is of no moment to this Court. Rogers's posting of a picture on his Facebook page in which he appears to possess weapons was unwise, since he was on bond at the time. By doing so, he gratuitously raised serious questions about whether he was in violation of bond (and the law). That said, the only information before the Court is the fact of the post and Rogers's proffer that the photo was taken years before he was on bond. Without more, the Court cannot find that Rogers violated any bond condition (or law) by posting the picture; nor can the Court find that this behavior supports a finding that he is a danger to the community.

Rogers's choice of apparel also does not foster a determination that he is a danger to the community. While many may find the messages on his shirts violent, distasteful, vulgar, and the

11

like, detaining him (in whole or in part) due to his choice of clothing raises very serious First Amendment concerns and is not warranted. No information has been provided to this Court that Rogers has committed or threatened to commit the purported violence depicted on his clothing, or that he has committed any illegal act with the Hell's Angels. The act of "supporting" that group (or even affiliating with same) may give one pause, but it does not give this Court evidence that a person is a danger to the community.

After a *de novo* review of the record, and while it is a very close question, the Court finds that release on bond with stringent conditions is appropriate. Given Rogers's conduct, as highlighted by Magistrate Judge Henderson, he provided her with ample fodder to order him detained. Absent the recommendation of Pretrial Services, this Court would likely have affirmed the detention order. Since Pretrial Services believes that a bond with conditions is appropriate, in lieu of detention, the Court will afford Mr. Rogers the opportunity to prove Pretrial Services correct (or incorrect). However, in addition to the conditions recommended in the Report, the Court will require Rogers to remain on location monitoring with home confinement during the pendency of this case. The Court will also have ***ZERO TOLERANCE*** for violations of the conditions of release.

### III. CONCLUSION AND ORDER

For these reasons, Mr. Rogers's motion to revoke the January 19, 2023 detention order is **GRANTED**. It is therefore ORDERED, ADJUDGED, and DECREED, that Defendant Jeffrey

Rogers shall be released pending trial, subject to the Bond and the Order Setting Conditions of Release filed contemporaneously with this Order.

     **IT IS SO ORDERED.**

     **Date: February 10, 2023**

*/s/ Charles Fleming*

_____
**JUDGE CHARLES E. FLEMING**
**UNITED STATES DISTRICT COURT**